**STATE of Missouri, Plaintiff–Appellant,**

v.

**Brian DEVLIN, Defendant–Respondent.**

**No. 53513.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 1, 1988.

G. Michael Archer, Asst. Pros. Atty., Clayton, for plaintiff-appellant.

James W. Whitney, Jr., St. Louis, for defendant-respondent.

REINHARD, Judge.

The state appeals after the trial court granted defendant's motion to dismiss charges of driving while intoxicated. We reverse and remand.

The motion to dismiss was based solely on the offense report of Officer Charles Boschert of the St. Louis County Police Department. In his report, Boschert stated that about 3:00 a.m. on October 15, 1986, Officer Paul West of the St. Charles Police Department was returning to St. Charles from the city of Ballwin with a prisoner.

As he neared the Missouri River on U.S. Highway 40 in St. Louis County, West observed a slowly moving automobile weaving back and forth across the westbound lanes of the highway. The automobile suddenly pulled to the right shoulder of the road and stopped. West stopped his vehicle behind the automobile, approached on foot, identified himself to defendant, the driver, as a St. Charles police officer, and asked him to remove his keys from the ignition. Defendant complied and West then requested that a St. Louis County police officer respond. Officer Boschert arrived, administered field sobriety tests to defendant, and arrested him for driving while intoxicated.

In support of this motion, defendant directed the trial court's attention to *Settle v. State*, 679 S.W.2d 310 (Mo.App.1984), *cert. denied* 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985). In its response to defendant's motion, the state admitted that the power of a law enforcement officer outside his jurisdiction is limited to that of a private citizen. The state contended, however, that a private citizen can arrest another for a breach of the peace in his presence, and defendant's conduct was a breach of the peace. The state also argued that Officer West's conduct did not constitute an arrest. The trial court granted defendant's motion to dismiss.

On appeal, the state contends that Officer West "was acting within the boundaries of ... a private citizen," and, even if his actions had been improper, "there was sufficient attenuation to purge the taint of the impropriety...." Because of our conclusion that there is insufficient evidence in the record that West's action constituted a seizure of defendant for Fourth Amendment purposes, we need not specifically rule on these issues.

In their briefs, both parties discuss *Settle*, 679 S.W.2d 310, and *State v. Neher*, 726 S.W.2d 362 (Mo.App.1987). In *Settle*, a Kansas City, Missouri, police officer observed the defendant meet two women on a convenience store parking lot. The defendant and the women left the parking lot in separate vehicles and the officer followed.

After leaving the corporate limits of Kansas City and entering the city of Gladstone, the officer observed the defendant's car leave the roadway onto the shoulder. Considering this to be an indication that the defendant possibly was driving under the influence, he requested assistance from Gladstone police. The officer followed the two cars into an apartment complex parking lot. Prior to the arrival of Gladstone police, the officer took identification from the two women, ran a computer check on them, and permitted them to leave. He apparently took identification from the defendant also, because he ran a computer check on him. After Gladstone police officers arrived, the defendant discarded a vial containing a controlled substance which police recovered. The defendant was arrested and charged with felony possession of a narcotic.

In *Neher*, Norborne, Missouri, city police officers, sitting in a marked patrol car inside the city limits, observed the defendant's vehicle cross the center line of a highway causing another car to pull off the road. As the defendant left the city limits he forced another car off the highway. The officers followed the vehicle to observe it and requested assistance. The county sheriff informed the officers that a highway patrol trooper was en route and instructed them to stop the vehicle. The officers turned on the patrol car lights, stopped the vehicle, approached it, and noticed a heavy odor of alcohol emanating from inside. One officer identified himself as "from Norborne" and told the defendant there was a trooper en route and that he would like him to remain in the vehicle because of his erratic driving. The defendant showed the officer his driver's license which the officer retained until the trooper arrived who observed the defendant's condition and arrested him for driving while intoxicated.

■ Both opinions recognize that, with limited exception, when a law enforcement officer leaves his territorial jurisdiction, his status is transformed into that of a private citizen. *Settle*, 679 S.W.2d at 317; *Neher*, 726 S.W.2d at 363–64. A private citizen

may arrest on a showing of the commission of a felony and reasonable grounds to suspect the arrested party, to prevent an affray or breach of the peace, and for a misdemeanor if authorized by statute. *Settle,* 679 S.W.2d at 317–18. Regarding a private citizen's power to arrest for a traffic offense, the court in *Settle* stated,

No authority can be found granting private citizens the privilege to stop and detain persons believed to have committed ordinance violations or traffic offenses, and the wisdom of recognizing such a privilege is seriously doubted. Delegating to private citizens the authority to investigate and arrest for such offense would invite more breaches of the peace than the number hoped to be prevented.

679 S.W.2d at 318.

In *Settle* and *Neher* the western district concluded the arrests were illegal because the officers had been outside their respective jurisdictions when they made the arrests. In *Settle,* the court reversed the conviction; in *Neher,* the court affirmed the conviction because it found the second arrest was "based upon the trooper's own investigation which was, therefore, not discovered through any exploitation of the first arrest."

Both *Settle* and *Neher* are predicated on a finding that the defendants were seized for purposes of the Fourth Amendment. In *Settle,* the court set forth fundamental principles regarding a seizure by law enforcement officials.

A seizure of a person occurs whenever an officer by physical force or through a show of authority imposes an involuntary restraint upon an individual's liberty. Deprivations of individual liberty falling short of a full-scale arrest still raise Fourth Amendment concerns. Not every street encounter between police officers and private citizens, however, results in an actual or constructive restraint of liberty. The test as posed by the United States Supreme Court is whether under all of the surrounding circumstances, a reasonable person would have believed he was not free to

leave. "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification."

679 S.W.2d at 316 (citations omitted).

In *Settle* and *Neher,* the court set forth the facts, as developed at the suppression hearing in *Settle* and both trials, that led it to conclude that both defendants had been seized for purposes of the Fourth Amendment. In *Settle,* the court stated that the defendant reasonably could have believed "his option to walk away from [the officer] had been foreclosed." The officer wore a uniform and carried a gun, he shined a light in the defendant's face, and he positioned his car to restrict any exit. The officer asked the defendant to produce identification and made him wait until a computer check was completed. The officer permitted the two women to leave but not the defendant. The officer's conduct "objectively told Settle that compliance was compelled." 679 S.W.2d at 316.

In *Neher,* the court stated that an arrest actually occurred because the officer turned on the red lights of the patrol car causing the defendant to pull over and stop, told the defendant there was a trooper en route, and said he would like him to remain in the vehicle because of his erratic driving. The officer had on his badge, was wearing a gun, and was driving a marked patrol car. He retained the defendant's driver's license until the trooper arrived and then gave the license to the trooper. 726 S.W.2d at 364.

■ We believe the situation before us is more nearly like that in *State v. Conti,* 573 S.W.2d 95 (Mo.App.1978). In *Conti,* a uniformed police officer on routine patrol in a marked police car a few minutes before midnight observed a stranger, the defendant, standing alongside a van in a public street with both hands above his head apparently rolling a cigarette. The officer stopped and asked defendant what he was doing. Hearing no response he got out of his patrol car, approached defendant on

foot, and again asked him what he was doing. The defendant uttered an "unintelligible" mumble, placed his right foot on a hand-rolled cigarette lying on the pavement, and with his left foot kicked at a "canvas-like" green bag lying on the pavement. The officer then moved to within a foot or two of the defendant at which time he observed through the open door of the van a clear plastic bag containing what he believed to be marijuana lying on the right front seat. The court concluded that the officer's conduct, up to the moment he was able to view plastic bag of marijuana, fell short of a seizure within the purview of the Fourth Amendment.

The skeletal evidence contained in the St. Louis County police report shows that Officer West's conduct fell far short of that of the officers in *Settle* and *Neher*. In fact, we believe West's conduct was less restrictive than that of the officer in *Conti*. The evidence in the record is that West stopped behind an automobile that had been driven erratically and had pulled off the roadway suddenly, identified himself to the driver as a St. Charles police officer, and asked him to remove his keys from the ignition. There is no evidence that West was in uniform or carried a weapon, no evidence that he was driving a marked police car or activated any emergency lights, and no evidence that he took defendant's keys or requested identification from him.

Had the conduct of Officer West been that of a private citizen, we do not believe the request that he remove his keys from the ignition would have been sufficient to support a civil action for false arrest, false imprisonment, or assault. *See Sturgeon v. Holtan*, 486 S.W.2d 209 (Mo.1972); *City of Advance ex rel. Henley v. Maryland Casualty Co.*, 302 S.W.2d 28 (Mo.1957); *Helming v. Adams*, 509 S.W.2d 159 (Mo.App. 1974). The fact that West identified himself as a St. Charles police officer was not enough to lead defendant to reasonably believe that he was not free to leave.

Reversed and remanded.

GARY M. GAERTNER, P.J., and CRIST, J., concur.