**STATE of Missouri, Plaintiff–Respondent,**

v.

**Teena E. COLLINS, Defendant–Appellant.**

**No. 24261.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 28, 2002.

Randell K. Wood, Noah K. Wood, Law Office of Wood & Assoc., of Springfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., of Jefferson City, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

Teena E. Collins ("Defendant") was charged with the class D felony of driving while intoxicated, in violation of Section 577.010.[1]  Following a bench trial, she was found guilty and was sentenced to five years imprisonment.  The trial court suspended execution of the sentence, and placed Defendant on five years supervised probation.  Defendant appeals.

In the early morning hours of June 23, 1999, Officer John Poulson ("Officer Poulson") of the City of Willard Police Department was parked in his patrol car on the shoulder of the road, facing east on U.S. Highway 160 at Route AD in Willard, Missouri.  Officer Poulson noticed two pickup trucks heading west on Highway 160, a smaller one in front and a larger truck following within one car length.  Officer Poulson determined that the second truck was following too closely, so he followed the trucks without activating his overhead lights, hoping that the sight of his patrol car would alert the driver of the second truck to correct the problem.  While following the trucks, Officer Poulson saw that the second truck was driving with its right tires on the white fog line.  The truck went off onto the shoulder and then corrected, causing the left tires to cross over the center line.  The truck then corrected the other way, going onto the shoulder of the road.  Officer Poulson then activated his overhead lights to stop the second truck.

Both of the trucks pulled over, and the driver of the first truck got out and spoke

---

1.  All statutory references are to RSMo 2000,  unless otherwise indicated.

with Officer Poulson, telling him that he was the uncle of Defendant, the driver of the second truck. Officer Poulson asked the uncle to wait at Cotner's Corner at the intersection of Highway 160 and Highway 123, which he did.

Officer Poulson approached Defendant, who had her window rolled down. He noticed that Defendant's eyes were "fairly bloodshot," and he smelled the odor of intoxicants when she spoke. After being asked for her license and insurance card, Defendant had trouble opening her purse, retrieving the documents, and closing her purse. Defendant's speech was "slurred and mumbled," forcing Officer Poulson to ask her to speak up or to repeat herself several times. Officer Poulson told Defendant that he smelled the odor of intoxicants and asked her how much she had had to drink. Defendant denied drinking, and told Officer Poulson that the smell was her new pine-scented air fresheners. Officer Poulson then returned Defendant's insurance card, keeping her license, and told her to wait there. When Officer Poulson went back toward the patrol car, Defendant started her truck and left. Defendant's truck was weaving on and off the shoulder of the road as she left. Officer Poulson got into his car, activated his siren, and followed Defendant.

After being pursued by Officer Poulson, Defendant pulled over again near the off ramp from Highway 160 to Highway 123. When Officer Poulson approached, Defendant said, "Well, I thought you were finished with me." Officer Poulson administered a horizontal gaze nystagmus test, which indicated that Defendant was possibly intoxicated. Officer Poulson then asked Defendant to remain in the truck, to turn off the engine, and to give him the keys, which she did. Officer Poulson then went to his patrol car and requested backup.

After backup arrived, Officer Poulson asked Defendant to get out of the truck for field sobriety tests. As she stepped out, she fell toward the lane of traffic and had to use the truck door to catch herself. When she regained her balance, she started walking toward the back of the truck, keeping her hand on the truck to maintain balance. Officer Poulson then administered the horizontal gaze nystagmus test again, since Defendant was not facing forward during the first test. As Officer Poulson was explaining the test, Defendant lost her balance and fell backward. The test again indicated that Defendant was possibly intoxicated.

Officer Poulson then administered the walk and turn test. He told Defendant to stand heel to toe while he explained the test. However, Defendant immediately started walking. Officer Poulson stopped her and had her come back and try again, telling her to "just stand there" heel to toe. Once again, Defendant started walking. After repeating the instructions again, Defendant finally stood still. However, while standing, Defendant lost her balance, so Officer Poulson had her stand with her feet apart for the rest of the instructions. During the walk and turn test, Defendant stepped on her toe, stepped off the line, used her arms for balance, and failed to touch heel to toe.

Finally, Officer Poulson administered the one-leg stand test. Defendant put her foot down four .times, used her arms for balance, swayed from side to side, and hopped several times during the test. Officer Poulson arrested Defendant and transported her to the Willard Police Department.

At the police station, Officer Poulson advised Defendant of her rights and asked her to take a breath test, which she agreed to do. In the course of questioning Defendant pursuant to the Alcohol Influence Re-

port, Officer Poulson asked Defendant what time she thought it was. Although it was 4:00 a.m., Defendant said it was 9:30 p.m. Officer Poulson observed Defendant for fifteen minutes and then had her take the test, which revealed a blood alcohol content of .180 percent.

Sergeant Ronald Killingsworth ("Sergeant Killingsworth") testified that he tested the Willard Police Department breath analysis machine, a BAC DataMaster with serial number 950331, and that the machine was functioning properly. The State also presented evidence that Defendant had two prior convictions for driving while intoxicated within the past ten years.

Defendant did not testify in her own defense, but called her uncle, who testified that she did not appear intoxicated to him that night. Defendant's mother also testified that Defendant had a number of health problems that might have made her appear to be intoxicated.

At the close of all the evidence, the trial court found Defendant guilty of driving while intoxicated. Defendant appeals.

█ In her first point on appeal, Defendant argues that the trial court erred in admitting into evidence "the results of a breathalyzer test without a proper foundation of absolute and literal compliance with the Department of Health regulations promulgated pursuant to Chapter 577." Defendant contends that there was not sufficient evidence that Officer Poulson, who administered the breath test, was certified to run the BAC DataMaster machine used to measure Defendant's blood alcohol level.

█ Trial courts are vested with broad discretion over the admissibility of evidence, and appellate courts will not interfere with those decisions unless there is a clear showing of an abuse of that discretion. *State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999). A trial court will be

found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Brown*, 939 S.W.2d 882, 883 (Mo. banc 1997); *State v. Mathews*, 33 S.W.3d 658, 660 (Mo.App. S.D.2000). If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Brown*, 939 S.W.2d at 883–84.

In the instant case, Officer Poulson testified that he took Defendant to the Willard Police Department, that she was read her Miranda rights and implied consent warnings from the Alcohol Influence Report, and that she agreed to take the test. Officer Poulson then testified:

[Prosecutor]: Are you certified to perform a breath test?

[Officer Poulson]: Yes.

[Prosecutor]: And were you certified at the time of this test?

[Officer Poulson]: Yes, I was.

[Prosecutor]: What type of permit did you hold?

[Officer Poulson]: A Type III permit from the Department of Health.

Officer Poulson also testified that he followed the checklist found on the Alcohol Influence Report to set up the instrument and enter Defendant's information into the instrument. He observed Defendant for fifteen minutes prior to the test to insure that there was no oral intake during that time. Officer Poulson then instructed Defendant on how to take the test. While there were no results from the first attempt, Defendant's second test showed her blood alcohol level to be .180 percent. Officer Poulson identified State's Exhibit 3 as the "evidence taken from the DataMaster," which contained the test results, Defen-

dant's name, Officer Poulson's ID numbers and signature, and the serial number of the instrument, 950331.

Early in the foundation questions, Defendant objected to the foundation because there had been no evidence of maintenance of the machine and "the other qualifications of this person operating the machine." The trial court admitted the test results subject to the requirement that the foundation be later proven. Defendant later asked for this to be a continuing objection.

Sergeant Killingsworth then testified as to the maintenance of the machine:

> [Prosecutor]: Do you have any specific duties for the Willard Police Department as it relates to breath testing instruments?
>
> [Sergeant Killingsworth]: Yes, sir. I'm responsible for keeping the maintenance reports and to keep the instrument running.

After the parties stipulated that Sergeant Killingsworth held a Department of Health Type II permit at the time, Sergeant Killingsworth testified that he had performed a maintenance test on the machine, which showed that it was functioning properly. A copy of the test results, including a certification of the simulator solution, were admitted into evidence. The documentation of the results revealed that the instrument was a BAC DataMaster, serial number 950331, which was the same machine Officer Poulson had used to administer Defendant's breath test.

During argument on her motion for judgment of acquittal, Defendant contended that the foundation was insufficient because Officer Poulson never testified that he was qualified to operate the BAC Data-Master that was used in this case. The trial court found that the foundation was sufficient because Officer Poulson testified that "he was certified to run the machine,"

and the evidence showed that the BAC DataMaster was the only breath-testing instrument at the Willard Police Department.

■ To establish the foundation for the admission of an alcohol breath test, the proponent of the evidence must show that the person administering the test followed the Department of Health's approved techniques and methods, that he had a valid permit to administer the test, and that he used equipment and devices approved by the Department of Health to administer the test. *Peters v. Director of Revenue*, 35 S.W.3d 891, 895 (Mo.App. S.D.2001).

In the instant case, Defendant argues that the State was required to prove that Officer Poulson's Type III permit certified him to run the specific breath analyzer used for the test. She cites *Potts v. State*, 22 S.W.3d 226, 230 (Mo.App. W.D.2000), and *State v. Regalado*, 806 S.W.2d 86, 88 (Mo.App. W.D.1991), for the principle that the State must demonstrate "absolute and literal compliance" with the statutory provisions of Chapter 577 to introduce the test results into evidence.

Section 577.020.3, however, requires that for a test to be valid it must "be performed according to methods approved by the state department of health by ... a person possessing a valid permit issued by the state department of health for this purpose." Section 577.020 does not state that the valid permit must be instrument specific, and Defendant cites no case law in support of this proposition. Even if there is some requirement for the State to show that the Type III permit was for a specific instrument, the State presented enough evidence that Officer Poulson was certified to run the instrument on which Defendant was tested. Officer Poulson testified that he was certified to perform breath tests as part of his duties as a Willard police offi-

cer. The evidence showed that the Willard Police Department had only one breath analyzer, the BAC DataMaster bearing the serial number 950331. This was the same instrument used by Officer Poulson to test Defendant's breath.

The State met the foundational requirements to admit the test results in accordance with Chapter 577. Consequently, we cannot say that the trial court abused its discretion in admitting the results of the breathalyzer test. Defendant's first point is denied.

■ In her second point, Defendant contends that the trial court erred in admitting into evidence the "results of field sobriety tests and a breathalyzer test obtained after an illegal arrest by a municipal police offer [sic] outside of his jurisdiction." Defendant claims that it was undisputed that the final stop of Defendant occurred outside of Willard, and that "[v]irtually all of the observations" that Officer Poulson made were after Defendant's "liberty was restrained."

Defendant did not file a pretrial motion to suppress evidence of the arrest, nor did she object to any of the State's evidence on the basis of an illegal arrest. After the close of the State's case, Defendant sought a judgment of acquittal because the State failed to present evidence that Officer Poulson arrested Defendant within his jurisdiction. The trial court took judicial notice that the location of the first stop was within the city limits of Willard, and then overruled Defendant's motion.

■ Defendant's claims are not preserved for appeal. Defendant claims that her arrest by Officer Poulson violated her Fourth Amendment rights because she was arrested outside the city limits of Wil-

lard. However, Defendant did not raise any alleged infirmity in the arrest until the State had rested its case. A claim that evidence was obtained in violation of a defendant's constitutional rights must be raised at the earliest opportunity. *State v. Galazin*, 58 S.W.3d 500, 505 (Mo. banc 2001). Specifically, a defendant must raise a claim of an unlawful search or seizure by filing a motion to suppress evidence before trial. *Id.* at 504. Here, Defendant filed no such pretrial motion. Therefore, Defendant's claim is not preserved for appeal.

■ Further, Defendant did not object to the evidence at the time it was offered at trial on the basis that the evidence was the result of an illegal arrest. A specific objection to evidence at the time the evidence is offered is required to preserve the issue for appellate review, and the failure to object at the earliest opportunity constitutes a waiver of that claim. *State v. Evenson*, 35 S.W.3d 486, 491 (Mo.App. S.D.2000).

■ This Court, however, may grant Defendant plain error review under Rule 30.20.[2] To be entitled to relief under the plain error rule, the defendant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting substantial rights. *State v. Parker*, 856 S.W.2d 331, 332 (Mo. banc 1993). The defendant must demonstrate that manifest injustice or a miscarriage of justice will occur if the error is not corrected. *State v. Worthington*, 8 S.W.3d 83, 87 (Mo. banc 1999); *State v. Burgess*, 28 S.W.3d 441, 443 (Mo.App. S.D.2000).

■ When a defendant complains for the first time during trial that evidence is not admissible due to an officer's lack of

**2.** All rule references are to Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

authority to arrest, the defendant bears the burden of establishing the unlawfulness of the police conduct. *Galazin,* 58 S.W.3d at 505. Although Defendant claims that it was "undisputed in the trial [c]ourt that [the] final stop of the vehicle was outside the city limits of Willard," there was no evidence presented that Defendant was arrested outside the city limits. The trial court only took judicial notice as to the first stop of Defendant being within the city limits.

■ Even if Defendant had proven that the final stop of her truck and her subsequent arrest were outside the city limits, Officer Poulson had the authority to arrest Defendant outside the city limits. Section 544.157.1 states:

> [a]ny law enforcement officer certified pursuant to chapter 590, RSMo, of any political subdivision of this state . . . in fresh pursuit of a person who is reasonably believed by such officer to have committed a felony in this state or who has committed, or attempted to commit, in the presence of such officer . . . any criminal offense or violation of a municipal or county ordinance . . . shall have the authority to arrest and hold in custody such person anywhere in this state.

"[F]resh pursuit" of a person who has committed a criminal offense or violation of a municipal or county ordinance must be initiated from within the officer's jurisdiction, and the officer must not lose contact with the person being pursued. Section 544.157.1.

In this case, Officer Poulson was clearly authorized under this statute to arrest Defendant outside the city limits of Willard. Officer Poulson was inside the city limits when he first saw Defendant following the first truck too closely, which is a class C misdemeanor. *See* Section 304.017. Officer Poulson then followed Defendant and saw her vehicle cross the center line and

go onto the shoulder of the highway, which was a violation of state law for failing to drive in the right-hand lane. *See* Section 304.015.2. Officer Poulson then stopped Defendant within the city limits, and he observed signs leading him to believe that Defendant was driving while intoxicated, in violation of Section 577.010. Because Defendant left the scene of the initial stop, Officer Poulson pursued her, without losing contact, until he finally stopped her the second time. Officer Poulson was in "fresh pursuit" of Defendant at the time of the second stop, and, therefore, was authorized under Section 544.157.1 to arrest Defendant outside the city limits.

In addition, Officer Poulson's testimony about what he observed after the second stop was admissible regardless of whether or not he was outside the city limits. Even if an officer acts outside his jurisdiction, he is not precluded from testifying about what he observed. *State v. Cross,* 34 S.W.3d 175, 185 (Mo.App. W.D.2000). The validity of the arrest, at most, would only affect the validity of a search stemming from that arrest. *Id.* Therefore, Officer Poulson's testimony regarding his observations of Defendant's intoxication after the second stop was admissible.

■ Furthermore, Defendant has failed to demonstrate any manifest injustice resulting from the failure to exclude evidence of the field sobriety tests and breathalyzer test. Section 577.010.1 requires proof only that a defendant "operate[d] a motor vehicle while in an intoxicated or drugged condition." It does not require a showing of any level of intoxication. *Id; State v. Teaster,* 962 S.W.2d 429, 431 (Mo.App. S.D.1998). Intoxication is a physical condition usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination, and an impairment of motor reflexes. *Cross,* 34 S.W.3d at 185. Whether a defendant is

intoxicated may be proven by any witness who had a reasonable opportunity to observe him. *Id.* Here, Officer Poulson's observations were sufficient to establish Defendant's violation of Section 577.010. Defendant's second point is therefore denied.

The judgment of the trial court is affirmed.

PARRISH, J., concurs with separate opinion.

RAHMEYER, J., concurs.

JOHN E. PARRISH, Judge.

I concur in the principal opinion's disposition of Point I. I further concur in the conclusion that the claims set forth in Point II were not preserved for appeal. I would dispose of Point II on that basis. I would not grant plain error review.