STATE of Missouri, Respondent,

v.

Somer E. PATTON, Appellant.

No. 26222.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 14, 2005.

Motion for Rehearing and Transfer
Denied Feb. 7, 2005.

Application for Transfer Denied
April 5, 2005.

280

M. Shawn Askinosie, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Following a bench trial, Appellant Somer E. Patton ("Defendant") was convicted of the class D felony of Driving While Intoxicated, section 577.010.[1] Defendant was sentenced to four years in the Missouri Department of Corrections; however, execution of the sentence was suspended and Defendant was placed on five years supervised probation. Defendant raises two points on appeal. She first avers the evidence was insufficient to support her conviction. Secondly, she maintains the trial court plainly erred by not suppressing evidence arising from what she maintains was an illegal traffic stop by police that led

to her conviction. We affirm the judgment of the trial court.

■ "This [C]ourt reviews the sufficiency of the evidence in a court-tried criminal case by applying the same standard used in a jury-tried case." *State v. Agee,* 37 S.W.3d 834, 836 (Mo.App.2001). As such, we observe that "[w]itness credibility is a matter for the trial court, and is not within the province of the appellate court in a court-tried criminal case." *State v. Daniels,* 18 S.W.3d 66, 68 (Mo.App.2000).

■ Defendant's first point of trial court error is premised on the State's failure to present sufficient evidence to support her conviction. In determining the sufficiency of the evidence, "[t]his Court accepts as true all evidence tending to prove guilt along with all reasonable inferences that support the guilty finding while all contrary evidence and inferences are disregarded." *State v. Bewley,* 68 S.W.3d 613, 617 (Mo.App.2002). Our "review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact might have found the defendant guilty beyond a reasonable doubt." *State v. Pasteur,* 9 S.W.3d 689, 697 (Mo.App.1999). "We do not weigh the evidence, but determine only whether there was sufficient evidence from which the trial court could have reasonably found Defendant guilty." *State v. Wilson,* 846 S.W.2d 796, 797 (Mo.App.1993). "If there is substantial evidence to support the trial court's findings, its judgment is to be affirmed." *State v. Girdley,* 957 S.W.2d 520, 523 (Mo.App.1997).

The record shows that on the evening of April 6, 2003, an officer with the Springfield Police Department, Shawn Clawson ("Clawson"), was parked in an alleyway

1. Defendant was also charged as "a prior and persistent driving while intoxicated offender" pursuant to section 577.023. All statutory references are to RSMo 2000, unless otherwise set out. Rule references are to Missouri Court Rules (2004).

near a Springfield liquor store on the corner of National Street and Elm Street. Clawson's vehicle was parked about 150 feet from a Dodge van that was parked in front of the liquor store. While observing the van, Clawson's attention was drawn to a female, later identified as Defendant, who was walking across the parking lot toward the van with two other persons. When she was about mid-way across the parking lot, Defendant "began to skip and slap her arms like a bird as she continued towards" the van. Perceiving this behavior to be unusual, Clawson believed Defendant to be intoxicated, especially since she had just exited a liquor store. Clawson observed Defendant enter the vehicle through the driver's side front door. As the van pulled out, Clawson "saw a person that looked like the same person that skipped across the parking lot" operating the vehicle.

Clawson then followed the van as it entered National Street and turned west onto Elm Street. "As it continued westbound, [the van] moved over to the center of the road outside of its proper lane and drove for approximately ... 100 feet or so down the middle of the road." While there were cars parked intermittently on both sides of Elm Street, it was Clawson's observation that it was not necessary to drive the van down the middle of the street; accordingly, he determined that this behavior indicated the driver of the vehicle was impaired or intoxicated. Clawson then activated various colored emergency lights located on his vehicle, attempting to signal the van to stop. However, the van continued westbound. Finally, Clawson turned his vehicle's spotlight on and the van pulled to the right very abruptly, coming to an immediate stop and elevating the van's rear bumper.

Clawson "immediately saw a commotion within the van, more than normal, as if people were moving within the van." He departed his patrol vehicle and approached the van. Illuminating the side of the vehicle with his spotlight, Clawson looked into the driver's side window and observed a gap between two "captain's chairs or-or seats" in the front part of the van. The driver's seat was empty. He then "observed [Defendant] back pedaling through that gap into the back bench seat, which was the first seat back in the passenger compartment," where she sat "on the lap of a backseat passenger." He noted that the driver, i.e., Defendant, was the same person he had seen getting into the van in the parking lot of the liquor store.

At trial, Clawson testified that when he requested Defendant's driver's license, she responded, "I don't have a driver's license, and I know I should not have been driving." On cross-examination, when asked if he was sure as to who was driving the van, Clawson answered, "I was very sure who the driver was without a shadow of a doubt."

After Defendant was arrested and transported to the police station, she denied having driven the van that evening. At trial, Michelle Barnhardt ("Barnhardt") testified on Defendant's behalf. Barnhardt asserted that she was the driver of the van that evening and that Defendant had not been driving. Moreover, Barnhardt insisted that it was she, not Defendant, who had panicked and jumped into the backseat after being stopped by Clawson. Barnhardt testified that she had obtained her driver's license only three weeks prior to the event under scrutiny. She readily acknowledged she was driving "in the middle of the road" because she was a new driver, and did so as a safety precaution. Barnhardt also acknowledged she encountered no other vehicles heading in her direction as she drove. Further, Barnhardt stated that she later went to

the police station and had written out a report indicating that she was not only the owner of the van in question, but she also had operated the van at the time of the police stop involving Defendant.

Both at trial and in this appeal, Defendant points to a number of inconsistencies in Clawson's trial testimony and arrest report which she maintains reflect on the credibility of Clawson's testimony as a whole. Chief among these inconsistencies is the fact that Clawson did not mention in his police report that he had observed Defendant at the liquor store. Furthermore, Defendant quarrels with Clawson's trial assertions that Defendant informed him that she "[did not] have a driver's license" and that she "[knew she] should not *have been driving.*" (Emphasis added.) She relates that this testimony was substantially different from the quote Clawson attributed to Defendant in his police report, where he wrote that Defendant said: "I don't have a driver's license, and I know I should *not be driving.*" (Emphasis added.)

"A person commits the crime of driving while intoxicated by operating a motor vehicle while in an intoxicated or drugged condition." *State v. Sales,* 886 S.W.2d 942, 943 (Mo.App.1994); § 577.010.1. Here, Defendant does not contest the fact that she was intoxicated at the time of the traffic stop in question. Her primary defense is that she simply was not operating the Dodge van when Clawson stopped it on Elm Street on April 6, 2003.

 As the State asserts, Defendant appears to be arguing that her evidence was more credible on the issue of who was driving than was the State's. However, in a court-tried criminal case, "determination of credibility of witnesses is a matter for the trial court and is not within the province of an appellate court to pass on their credibility." *Wilson,* 846 S.W.2d at 798.

"It is the duty of the trial court to determine which evidence is more credible and persuasive." *State v. Baumruk,* 85 S.W.3d 644, 648 (Mo. banc 2002). "As the trier of fact, the trial judge can believe all or part of a witness' testimony and reject the rest and can disbelieve testimony even if uncontradicted." *State v. Martin,* 850 S.W.2d 421, 422 (Mo.App.1993).

 Furthermore, we observe that " '[a] traffic stop may be justified by observation of conduct which may not itself even constitute a traffic violation but merely an unusual operation [of the vehicle].' " *State v. Malaney,* 871 S.W.2d 634, 637 (Mo.App. 1994) (quoting *State v. Bunts,* 867 S.W.2d 277, 280 (Mo.App.1993)). Here, Clawson was justified in stopping the van based purely on the fact that the operator crossed the center line of the road. *See State v. Purdy,* 766 S.W.2d 476, 477 (Mo. App.1989); § 304.015.2. As the arresting officer, Clawson's testimony alone was sufficient to support Defendant's conviction. *Martin,* 850 S.W.2d at 422.

Based on the evidence presented, we cannot say the trial court erred in determining that Defendant was operating the Dodge van at the time of the traffic stop. Further, Defendant does not contest the fact that she was intoxicated at the time of the arrest. There was sufficient evidence from which the trial court could have reasonably found Defendant guilty of driving while intoxicated. *See Wilson,* 846 S.W.2d at 798. Point One is denied.

 In her second point, Defendant asserts the trial court plainly erred in failing to suppress evidence of the stop because there was insufficient evidence of probable cause for the initial traffic stop.

As evidence of the pre-textual nature of Clawson's stop, Defendant points to Clawson's statement at trial that he followed Defendant in the van after she left the

liquor store, because "she may [have been] intoxicated" and that, after the stop, he asked the van's passengers about the identity of the driver in an attempt "to better [his] case."

 Defendant correctly points out that "[p]olice are allowed to conduct *Terry* stops of moving vehicles [only] upon a reasonable suspicion that the occupants are involved in criminal activity." *State v. Miller*, 894 S.W.2d 649, 651 (Mo. banc 1995); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "If an officer has an articulable suspicion that the driver of a vehicle is committing, or has committed, a traffic violation, then there is sufficient basis for a *Terry* stop of the vehicle." *State v. Taber*, 73 S.W.3d 699, 705 (Mo. App.2002).

 Defendant recognizes that she neither filed a motion to suppress Clawson's testimony and police report on the basis that her constitutional rights were violated by an illegal arrest, nor did she make any objections at trial to his testimony. "A claim that evidence was obtained in violation of a defendant's constitutional rights must be raised at the earliest opportunity." *State v. Collins*, 72 S.W.3d 188, 194 (Mo.App.2002). "Specifically, a defendant must raise a claim of an unlawful search or seizure by filing a motion to suppress evidence before trial." *Id. See* § 542.296.3; Rule 24.05. As explained in, *State v. Galazin*, 58 S.W.3d 500, 504 (Mo. banc 2001):

> In a driving while intoxicated case, the lawfulness of the defendant's arrest is

not an element of the offense. The lawfulness of the arrest is instead a collateral issue, one that does not bear upon guilt or punishment. One purpose of the requirement that unlawful search and seizure claims be made before trial is to avoid delays during trial in determining this issue. Another reason for the requirement is so the basis of the claim of unlawful search or seizure will be known, giving the [S]tate a fair chance to respond and the trial court a fair opportunity to rule on the claim. The rule helps to eliminate the possibility of sandbagging with respect to an issue not relating to guilt or punishment. [Consequently,] [u]ntil the defendant requests, by motion to suppress, that testimony obtained incident to an arrest be excluded due to the unlawfulness of the arrest, the state is not obligated to prove the validity [of the arrest] ... In effect, the accused loses the benefit of the presumption at a hearing on a timely filed motion to suppress that all warrantless searches and seizures are invalid.[2]

 Additionally, we note that a "specific objection to evidence at the time the evidence is offered is required to preserve the issues for appellate review, and the failure to object at the earliest opportunity constitutes a waiver of that claim." *Collins*, 72 S.W.3d at 194. Accordingly, Defendant seeks plain error review.

 "To be entitled to relief under the plain error rule, the defendant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting substantial rights." *Id.* "The de-

---

**2.** The only recognized exception to the requirements regarding pre-trial motions occurs where the defendant had no reason to anticipate that the alleged unlawfully seized evidence would be introduced and defendant was surprised by its introduction. *Galazin*, 58 S.W.3d at 506. Here, the evidence alleged to be unlawfully obtained is the testimony of

the arresting officer regarding Defendant's intoxicated condition while operating a van. It cannot seriously be argued that Defendant did not reasonably anticipate that Clawson would testify about the factual circumstances surrounding his arrest of Defendant and her intoxicated condition at the time of her arrest. *See Galazin*, 58 S.W.3d at 506.

fendant must demonstrate that manifest injustice or a miscarriage of justice will occur if the error is not corrected." *Id.;* *see* Rule 30.20.

Based on our review of the evidence as recited in Point One, we cannot say Defendant has suffered a manifest injustice or miscarriage of justice sufficient to warrant plain error review of her second point. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BATES, C.J., Concur.