**STATE of Missouri, Plaintiff–Respondent,**

v.

**James Scott MURPHY, Defendant–Appellant.**

**No. SD 31067.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 17, 2011.

Motion for Rehearing and Transfer
Denied Dec. 2, 2011.

Application for Transfer Denied
March 6, 2012.

Appellant appears pro se.

No brief filed by Respondent.

GARY W. LYNCH, Judge.

██ James Scott Murphy ("Defendant") appeals the trial court's judgment convicting him of speeding, in violation of section 304.010, and sentencing him to pay a fine of $150.00.[1] Defendant claims that the conviction cannot stand because the park ranger who issued the ticket acted outside his authority in issuing the ticket, the State failed to prove the offense because there was no evidence that the 35–miles–per–hour ["mph"] speed zone extended up to the sign for the 55–mph speed zone, and the uniform citation issued to him and filed in the trial court was an insufficient charging document.[2] We find these arguments to be without merit and affirm.

### Factual and Procedural Background

██ We summarize the facts adduced at the bench trial in this case in the light

---

1. References to section 304.010 are to RSMo Cum.Supp.2004. Unless otherwise indicated, all other statutory references are to RSMo 2000.

2. The State failed to file a respondent's brief in this matter. "[B]riefs by both parties are encouraged in order to give all parties the opportunity to aide the court in reaching a proper decision." *State ex rel. Neal v. Karl*, 627 S.W.2d 913, 914 (Mo.App.1982). "The failure of a respondent to file a brief on appeal is an imposition on the court and leaves us dependent upon an appellant's presentation and our own research; however, because no penalty is imposed by statute or rule, we proceed to determine the case on its merits." *In re A.T.H.*, 37 S.W.3d 423, 425 n. 1 (Mo. App.2001). In doing so, however, we do not excuse the Wayne County prosecuting attorney from his statutory obligation to represent the State in this misdemeanor appeal. Section 56.060, RSMo. Cum.Supp.2005; *State v. Weber*, 989 S.W.2d 256, 257 (Mo.App.1999). "It would seem that if the state was serious enough about this case to prosecute it, it would be serious enough to try and justify the conviction, instead of leaving to us the task of analyzing *defendant's arguments without the* benefit of the state's point of view." *State v. Harrington*, 679 S.W.2d 906, 907 (Mo.App. 1984). "[W]e cannot understand why a prosecutor would neglect his statutory duty to see that the state was adequately represented through the entire criminal proceeding." *Id.*

most favorable to the verdict. *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005). On the evening of the events in question, Eric Shearrer, a ranger of the Missouri Department of Natural Resources ("Ranger"), was working a radar unit in Sam A. Baker State Park ("the park"). Ranger testified that he was stationed about one-quarter mile within the park.[3] At that location, Highway 143 runs through the park for approximately three miles, and Ranger parked his car toward the north end of that stretch. The land on the west side of the highway is private property, but the land on the east side of the highway is inside the park. The highway itself is inside the park.[4] Ranger situated his vehicle parallel to Highway 143 facing south just beyond a bridge. The speed limit at that location was 35 mph. About 700 feet farther north on the highway is a sign marking the beginning of an area where the speed limit is 55 mph.

Ranger first observed Defendant's vehicle traveling north within the park on Highway 143 as the vehicle approached a bridge. Ranger gained a radar lock on the vehicle as it began to cross the bridge, and the radar unit emitted a high audio tone, indicating increasing speed. As the tone started to drop, indicating decreasing speed, Ranger obtained a reading of 57 mph as Defendant's vehicle left the bridge. Because of the deceleration, the vehicle's speed was a bit over 57 mph as it crossed the bridge. Ranger activated his lights and pulled the vehicle over.

Ranger asked Defendant if he knew what the speed limit was, and Defendant replied, "It's 55." Ranger said, "Well, sir, where you were at[,] it was actually 35." Defendant "indicated that he could see the 55[mph] speed limit, so he felt that it was 55[mph]." Ranger replied "that the speed limit doesn't actually change until you get to the speed limit sign." Ranger issued a uniform citation to Defendant for speeding.

---

3. The dissent ignores this testimony by Ranger and focuses instead on other parts of Ranger's testimony. The trial court, however, as the trier of fact, was free to believe or disbelieve all, part, or none of Ranger's testimony. *State v. Cook*, 339 S.W.3d 523, 528 (Mo.App. 2011). The dissent fails to explain why the trial court could not have believed Ranger's testimony that he was stationed *within* the Park or how our standard of review allows us to disregard that belief.

4. Ranger testified, without objection, "If there is private property on the opposite side of . . . the highway or waterway, we have jurisdiction under certain circumstances." He went on to testify, without objection, about an agreement between the Department of Natural Resources and the property owner. While this discussion may have had an impact on Ranger's credibility, it did not change the fact that Ranger testified, without objection, that the highway at that point was inside the park. Even if we were to assume that Ranger's location inside the park was critical to the validity of the conviction, *but see* discussion *infra*, Ranger's testimony that he was inside the park when he stopped Defendant would be dispositive of the issue because we defer to the trial court in matters of witness credibility. *State v. Zimmerman*, 886 S.W.2d 684, 691 (Mo.App.1994).

The dissent initially asserts that "[Defendant] objected to this testimony, but the State interrupted [Defendant] to inform him that that he could not object because the trial judge was asking the question." The transcript, however, only reflects that the prosecutor injected the statement, "The Judge asked the question. You need to—[,]" at which point the Defendant said, "All right." Defendant was never told he could not lodge an objection and failed to give any legal basis in his aborted attempt to object. As such, the Ranger testified without objection. The dissent next asserts that the trial court was obligated to ignore this testimony because it was hearsay. However, "[i]nadmissible hearsay that goes in the record without objection may be considered by the fact-finder in determining the facts." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002).

The citation identified the court, identified the location of the offense as "143 HWY SABSP[,]" and included Defendant's name and address. In the section provided for "facts supporting [the officer's] belief[,]" Ranger wrote "SPEEDING 57/35[.]" Below, in a box labeled "Driving" in the upper left corner and containing "MPH" in the lower right corner, Ranger had written "57" and a box labeled "Posted Speed Limit" in the upper left corner and containing "MPH" in the lower right corner, in which Ranger had written "35" Below both of those boxes was another box labeled "In violation of" in the upper left corner and a checkbox followed by "RSMo" in the upper right corner and a checkbox followed by "ORD." immediately under that in the lower right corner. Ranger completed this box by writing "304.010" and putting an "X" in the checkbox next to "RSMo." Toward the bottom of the citation is printed, "On information, undersigned prosecutor charges the defendant and informs the court that above facts are true and punishable by:" followed by a blank line and on the far right a checkbox followed by "RSMo" in the upper right corner and a checkbox followed by "ORD." immediately under that in the lower right corner. Immediately below the box with this language appears the signature of the Wayne County Prosecuting Attorney. The prosecutor filed the citation in the circuit court.

A trial was held at which Ranger testified to the facts recited above, and Defendant presented several photographs and maps of the area as exhibits. Defendant did not testify, but he argued to the trial court that the maps showed he was outside the park at the point where Ranger locked in the 57–mph radar reading, because "the maps show that the boundary line at the bridge stops at the water line" and that Ranger was not in the park when he took that radar reading and when he stopped

Defendant and issued the uniform citation. The trial court found Defendant guilty of speeding and sentenced him to pay a fine of $150.00.

### Discussion

### Sufficient Evidence Supported That Speeding Violation Occurred Within the Park

In his first point, Defendant claims that it was error for the trial court to find that he was within the park when he was on the bridge. He claims that section 253.065.1 only gives Ranger jurisdiction over state highways located within the boundary of a state park and that "[t]here was no evidence submitted that supported the Big Creek Bridge as being within the boundaries of Sam A. Baker State Park." We disagree.

To determine whether a conviction is supported by sufficient evidence, this Court examines the record for substantial evidence from which a reasonable fact-finder might have found guilt beyond a reasonable doubt. *State v. Kimes*, 234 S.W.3d 584, 586 (Mo.App.2007). "We accept as true all evidence and reasonable inferences tending to prove guilt and disregard all contrary evidence and inferences." *State v. Moore*, 194 S.W.3d 387, 390 (Mo. App.2006). "Conflicts in the evidence, determination of the credibility of witnesses and the weight to be given their testimony are within the peculiar province of the [fact-finder]." *State v. Zimmerman*, 886 S.W.2d 684, 691 (Mo.App.1994).

Ranger testified that the highway at all points relevant to this case was within the park. Defendant discredits this testimony because the maps he introduced at trial raise a question as to the park's

boundary line at that location.[5] "However, in a court-tried criminal case, 'determination of credibility of witnesses is a matter for the trial court and is not within the province of an appellate court to pass on their credibility.'" *State v. Patton*, 157 S.W.3d 278, 282 (Mo.App.2005) (quoting *State v. Wilson*, 846 S.W.2d 796, 798 (Mo. App.1993)). "'It is the duty of the trial court to determine which evidence is more credible and persuasive.'" *Patton*, 157 S.W.3d at 282 (quoting *State v. Baumruk*, 85 S.W.3d 644, 649 (Mo. banc 2002)). "'As the trier of fact, the trial judge can believe all or part of a witness' testimony and reject the rest and can disbelieve testimony even if uncontradicted.'" *Patton*, 157 S.W.3d at 282 (quoting *State v. Martin*, 850 S.W.2d 421, 422 (Mo.App.1993)). "Usually the testimony of a single witness is sufficient to establish any fact." *State v. Geary*, 884 S.W.2d 41, 45 (Mo.App.1994). *See also Moore*, 194 S.W.3d at 390; *Zimmerman*, 886 S.W.2d at 692. Defendant's first point is denied.

### Ranger's Authority to Act Does Not Affect the Validity of the Conviction

■ In his second point, Defendant claims that the trial court erred in not finding that Ranger was outside of the park boundaries "and could not lawfully pursue the defendant." Defendant claims that Ranger was outside the park at the time he observed the alleged offense and when he stopped Defendant to issue him the citation. Therefore, because Ranger had authority under section 544.157.1 to initiate a stop outside his jurisdiction only if he was in "fresh pursuit" and that such

"fresh pursuit" must originate from within Ranger's jurisdiction, *see City of Ash Grove v. Christian*, 949 S.W.2d 259, 264 (Mo.App.1997), Defendant argues that Ranger had no legal authority to stop him and issue the citation. The problem with Defendant's argument is, even assuming Ranger lacked authority to stop Defendant, an issue we do not reach, that does not relieve Defendant of his criminal culpability.

■ Generally, claims regarding the authority of an officer to make an arrest or stop are brought in the context of a motion to suppress evidence or in the context of a claim for damages against the arresting officer. *See* section 542.296; *see also Payton v. New York*, 445 U.S. 573, 591–92, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Appellate courts have uniformly rejected arguments that because an arrest or detention was in some manner allegedly illegal, the convicting court either (1) lacked jurisdiction to try and convict the defendant, or (2) should have dismissed the charging document altogether. *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *State v. Bannister*, 680 S.W.2d 141, 144 (Mo. banc 1984); *State v. Olinghouse*, 605 S.W.2d 58, 63 (Mo. banc 1980); *State v. Moore*, 580 S.W.2d 747, 749 (Mo. banc 1979); *State v. Brewer*, 861 S.W.2d 765, 768 (Mo.App.1993); *State v. Harding*, 734 S.W.2d 871, 874 (Mo.App. 1987); *State v. Malady*, 672 S.W.2d 171, 173 (Mo.App.1984). That is, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *Crews*, 445 U.S. at 474, 100 S.Ct. 1244.[6]

---

5. We note that the three maps introduced by Defendant are inconsistent with each other as to the exact boundary line for the park at that location.

6. Although decided on other grounds, the following cases also state the general principle that a conviction is not invalidated by an illegal arrest: *Gerstein v. Pugh*, 420 U.S. 103, 105, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *State v. Willis*, 654 S.W.2d 78, 80 (Mo. banc 1983);

This rule "rest[s] on the sound basis that due process of law is satisfied when one present in court is convicted of a crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952).

Thus, in the present case, Ranger's exact location when he made his observations is irrelevant to determining the sufficiency of the evidence to support the conviction. Ranger testified that he observed Defendant's vehicle traveling 57 mph in a 35–mph zone within the park. This evidence was sufficient to support the trial court's verdict. Any discussion regarding the authority of the officer to stop Defendant misses the mark.[7]

In that respect, this case is much like *Brewer*. In *Brewer*, the defendant claimed that the trial court erred in denying his motion to dismiss a driving-while-intoxicated charge because the reserve officer who stopped him lacked authority to arrest. 861 S.W.2d at 766. The court understood the defendant's argument to be that in order to make a submissible case of driving while intoxicated, the State had to prove that the officer had authority to stop the defendant. *Id.* The court disagreed with this argument, stating that if the arrest was indeed invalid, the remedy would be suppression of· any evidence obtained as a result of that arrest, not dismissal of the charges. *Id.* at 768.

In *State v. Estes*, 743 S.W.2d 118, 119 (Mo.App.1988), the court addressed a claim that a criminal charge should be dismissed because the Highway Patrol trooper did not have statutory authority to investigate the crime. The court reasoned that the issue of whether the officer had authority to act was not relevant because "[w]hether [the trooper] was acting under the authority of [the statute], or was merely acting in the role of a private citizen, if he observed the appellant engaged in a sale of drugs, then he could testify concerning the transaction." *Id.* Here, similarly, whether Ranger was inside the park or outside the park, he could testify to his observations regarding Defendant's actions, which constituted speeding under section 304.010.

Defendant's reliance on *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *City of Ash Grove*, 949 S.W.2d 259, *State v. Vinzant*, 716 S.W.2d 367 (Mo.App.1986), *Settle v. State*, 679 S.W.2d 310 (Mo.App.1984); and *Wenatchee v. Durham*, 43 Wash.App. 547, 718 P.2d 819 (1986), is misplaced. In each case the courts were asked to address the question of whether evidence found as a result of an illegal arrest should have been suppressed. *Wong Sun*, 371 U.S. at 484–85, 83 S.Ct. 407; *City of Ash Grove*, 949 S.W.2d at 264; *Vinzant*, 716 S.W.2d at 369; *Settle*, 679 S.W.2d at 316; and *Wenatchee*, 718 P.2d at 822–23. Here, in contrast, Defendant argues that the evidence was insufficient to support his convictions simply because he was illegally stopped.

---

*State v. Berry*, 609 S.W.2d 948, 952 n. 3 (Mo. banc 1980); *State v. Sims*, 391 S.W.2d 833, 834 (Mo.1965); *State v. Reding*, 634 S.W.2d 552, 553 (Mo.App.1982); *Hindman v. State*, 597 S.W.2d 264, 270 (Mo.App.1980).

**7.** While the dissent frames the dispositive issue as Ranger's lack of authority to issue the ticket, it fails to explain how the officer's lack of authority deprives the prosecutor of the authority to file an information charging De-

fendant with the offense or deprives the trial court of the authority to convict Defendant of that offense. Nor does the dissent address the long line of cases cited herein for the proposition that it does not. *See Crews*, 445 U.S. at 474, 100 S.Ct. 1244; *Bannister*, 680 S.W.2d at 144; *Olinghouse*, 605 S.W.2d at 63; *Moore*, 580 S.W.2d at 749; *Brewer*, 861 S.W.2d at 768; *Harding*, 734 S.W.2d at 874; *Malady*, 672 S.W.2d at 173.

Because those cases discuss the suppression of evidence, they are of no help in determining the effect of an allegedly invalid arrest on the sufficiency of the evidence to support a conviction. In any event, the most compelling evidence of the crime, Ranger's measuring of Defendant's speed with the radar gun, occurred *before* the stop. This evidence would not be suppressed even if Ranger's stop was invalid. The cases cited by Defendant do not support his argument.[8]

Ranger's authority to act had no bearing on the sufficiency of the evidence to support the verdict. Defendant's second point is denied.

### Sufficient Evidence Supported that the Speed Limit Was 35 Miles per Hour

■ In his third point, Defendant argues that there was insufficient evidence to sustain the conviction because the State presented no evidence "that the 55 mph speed limit zone started at the speed limit sign." Specifically, he asserts that Ranger's testimony, without legal support, was insufficient to support the trial court's conclusion that the speed limit at the location where Ranger observed Defendant's vehicle traveling at 57 mph was 35 mph.

As stated above, to determine whether a conviction is supported by substantial evidence, this Court examines the record for substantial evidence from which a reasonable fact-finder might have found guilt beyond a reasonable doubt, viewing the evidence and all reasonable inferences in the light most favorable to the verdict. *Kimes,* 234 S.W.3d at 586. Furthermore, as previously noted, "the testimony of a single witness is sufficient to establish any fact." *Geary,* 884 S.W.2d at 45.

Conviction of speeding requires proof that the defendant operated a vehicle in excess of the established speed limit. Section 304.010.2. Here, Ranger testified, without objection, that the speed limit was 35 mph where he observed Defendant operating his vehicle and that the limit did not change until approximately 700 feet to the north where the sign marking the start of the 55–mph zone was located. The trial judge, sitting as finder-of-fact, credited that testimony, and we must defer to that credibility finding. *Zimmerman,* 886 S.W.2d at 691. Defendant's argument that additional evidence was needed is without merit. Defendant's third point is denied.

### Charging Document was Sufficient

■ In his fourth point, Defendant argues that "no information in accordance with Supreme Court Rule's [sic] 21.01, 21.02 and 21.04 was filed formally charging him with this offense[.]" This argument is without merit because Missouri courts have repeatedly held that a uniform citation specifying the facts of the offense is a sufficient charging document when signed by the prosecutor and filed in the appropriate court.

■ As Defendant did not raise this argument in the trial court, review is limited. *State v. Parkhurst,* 845 S.W.2d 31, 35 (Mo. banc 1993). When a defendant challenges the sufficiency of the charging instrument

for the first time after verdict, the indictment or information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the

---

8. For the same reasons, the dissent's reliance on *City of Fredericktown v. Bell,* 761 S.W.2d 715, 717 (Mo.App. E.D.1988), and *State v.* *England,* 92 S.W.3d 335 (Mo.App. W.D.2002), is likewise misplaced.

substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced.

*Id.*

■ "An information is sufficient if it contains all the essential elements of the offense as set forth in the applicable statute and clearly apprise[s] the defendant of the facts that constitute the offense." *State v. Petterson,* 780 S.W.2d 675, 677 (Mo.App.1989). Courts have frequently found that a uniform citation which states the defendant's name, the charge, and the essential facts is sufficient to apprise the defendant of the nature of the charge against him and protect his substantial rights. *Id.* at 677. *See also State v. Austin,* 861 S.W.2d 334, 336 (Mo.App.1993); *City of St. Joseph v. Gann,* 463 S.W.2d 582, 585 (Mo.App.1971); *City of Independence v. Beth,* 458 S.W.2d 874, 875 (Mo.App.1970).

The essential elements of speeding are merely the established speed limit and the speed of the vehicle. *See* section 304.010.2. Here, the citation contained Defendant's name, the location of the offense, the statute violated, and a statement indicating that he had been driving at 57 mph when the posted speed limit was 35 mph. The citation was also signed by the prosecutor and filed with the court. This was sufficient to protect Defendant's substantial rights. Defendant's fourth point is denied.

### Conclusion

The trial court's judgment is affirmed.

BURRELL, P.J., concurs.

RAHMEYER, J., dissents in separate opinion.

NANCY STEFFEN RAHMEYER, Judge.

I respectfully dissent. James Scott Murphy ("Appellant") appeals his conviction for exceeding the posted speed limit. He claims the ranger who stopped him and issued the ticket was outside his territorial jurisdiction and, thus, without authority to issue the ticket. I would agree and reverse the judgment.

Appellant was traveling northbound on Highway 143 through Sam A. Baker State Park with his wife Josephine. Eric Shearrer, a park ranger for the Missouri Department of Natural Resources, testified that he was parked just off the west side of Highway 143, facing southbound and running radar on traffic traveling northbound on Highway 143.

Ranger Shearrer testified the speed limit throughout the park is 35 m.p.h. Ranger Shearrer further testified that the waterline under Big Creek Bridge is effectively the property line for Sam A. Baker State Park and that after the Big Creek Bridge the western side of Highway 143 is the Keithley private property and the eastern side remains Sam A. Baker State Park property. Ranger Shearrer also testified that he was parked north of Big Creek Bridge on Bob Keithley's *private property,* pursuant to an agreement between the park and the Keithley family allowing the ranger to station himself on their property.

During the stop Ranger Shearrer asked Appellant if he was familiar with the speed limit, to which Appellant replied, "It's 55." Appellant stated that he believed the speed limit to be 55 m.p.h. because he could see the 55 m.p.h. speed limit sign about 700 feet ahead, but was advised by Ranger Shearrer that the speed limit does not change until crossing the speed limit sign and, therefore, Appellant had been traveling in a 35 m.p.h. speed zone. Ranger Shearrer testified that three miles of

Highway 143 travel through the park and Appellant was on the extreme north end of the park, indicating that if Appellant came from the park then he had driven past several 35 m.p.h. speed limit signs. The trial court convicted Appellant of driving 57 m.p.h. in a 35 m.p.h. zone on March 4, 2010.

Section 253.065.1 provides in part, "Each park ranger employed by the director of the department of natural resources ... shall ... preserve the peace and make arrests for violations of law on all land under the jurisdiction and control of the director and on all state and county highways **within the boundaries of state parks.**" Section 253.065.1 (emphasis added).[1] Officers enjoy greater powers of arrest than do private citizens, but an officer may make arrests only within his territorial jurisdiction, unless otherwise authorized by statute. *State v. Devlin,* 745 S.W.2d 850, 851 (Mo.App. E.D.1988). When an officer makes an arrest outside his territorial jurisdiction, his power to do so is no greater than that of a private citizen.[2] *Id.*

Ranger Shearrer testified that he was parked outside of the Sam A. Baker State Park on Bob Keithley's private property at the time he observed Appellant coming across the Big Creek Bridge. Ranger Shearrer further testified that his radar did not lock on to Appellant's speed until after Appellant had exited the northern end of the bridge, which was outside the park boundary.

The majority opinion states that Ranger Shearrer testified "without objection" that "If there is private property on the opposite side of ... the highway or waterway, we have jurisdiction under certain circumstances." The testimony about an agreement with the landowner came into evidence in response to the trial court calling Ranger Shearrer back to the witness stand to testify. Appellant objected to the testimony, but the State interrupted Appellant to inform him that that he could not object because the trial judge was asking the question. The trial judge did not rule on the objection to its own question. Because any purported agreement was clearly hearsay, we assume the trial court disregarded the testimony, just as we should. *State v. Smith,* 163 S.W.3d 63, 68 (Mo.App. S.D.2005) ("Because this is a court-tried case, we presume the trial judge disregarded any improperly admitted evidence in reaching the verdict. Consequently, '[w]here a judge, rather than a jury, is the trier of fact, the reviewing court presumes that inadmissible evidence is not prejudicial.'" (internal citations omitted)). No such agreement was admitted into evidence as part of the trial record.

Here, accepting as true all the evidence favorable to the State, Ranger Shearrer was not within his jurisdiction when he stopped and ticketed Appellant. I am left then with the question of law—whether a conviction for speeding can occur as a result of a ticket issued by a person acting in the capacity of a private citizen. I find that it cannot or should not. In finding so,

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. We note that Appellant's citation by Ranger Shearrer could not have been considered valid as a citizen's arrest. "A private citizen may arrest on a showing of the commission of a felony and reasonable grounds to suspect the arrested party, to prevent an affray or breach of the peace, and for a misdemeanor if

authorized by statute." *Devlin,* 745 S.W.2d at 851–52. "'No authority can be found granting private citizens the privilege to stop and detain persons believed to have committed ordinance violations or traffic offenses....'" *Id.* (quoting *Settle v. State,* 679 S.W.2d 310, 318 (Mo.App. W.D.1984), *overruled on other grounds by State v. Renfrow,* 224 S.W.3d 27, 35 n. 3 (Mo.App. W.D.2007)).

I am guided by the fact that "it has long been the law in Missouri that section 85.610 and its predecessors do not grant an officer authority to make an extra-jurisdictional arrest of a person seen violating an ordinance even if that person leaves the jurisdiction in an attempt to avoid arrest." *City of Fredericktown v. Bell,* 761 S.W.2d 715, 717 (Mo.App. E.D.1988); *see also Settle,* 679 S.W.2d at 317; *Rodgers v. Schroeder,* 220 Mo.App. 575, 287 S.W. 861, 864 (Mo.App.St.L.D.1926).

> No authority can be found granting private citizens the privilege to stop and detain persons believed to have committed ordinance violations or traffic offenses, and the wisdom of recognizing such a privilege is seriously doubted. Delegating to private citizens the authority to investigate and arrest for such offense would invite more breaches of the peace than the number hoped to be prevented.

*Settle,* 679 S.W.2d at 318.

" 'In Missouri, a private citizen can make an arrest on a showing of commission of a felony and reasonable grounds to suspect the arrested party.' " *State v. England,* 92 S.W.3d 335, 340 (Mo.App. W.D.2002) (quoting *Settle,* 679 S.W.2d at 317). Speeding is only a misdemeanor offense; therefore, the park ranger, acting as a private citizen outside of his jurisdiction, was not permitted to stop or arrest Appellant outside of the park grounds based upon the speeding violation. *Id.* In England, the speeding ticket was dismissed, *Id.* at 339; however, the officer in question eventually stopped and arrested the defendant when he reentered the officer's jurisdiction based upon his observations as a private citizen. *Id.* at 340–341. "It is not pretended, nor can it be maintained, that a citizen could rightfully make such an arrest, or disarm a person, doing no more, at the time, than carrying a concealed weapon." *State v. Holcomb,* 86 Mo. 371, 381 (1885) (A watchman, designated a person having the duties of a policeman of a city, was without authority, in the absence of a warrant, to arrest a person for the lawful carrying of a concealed weapon.) The reasoning behind such rulings is that "statutes authorizing such officers to make arrests upon view and without process, being in derogation of liberty, are strictly construed." *Rodgers,* 287 S.W. at 863. "The power of such officers to arrest without process for mere quasi criminal offenses arising from the violation of ordinances is liable to serious abuses, and ought not to be enlarged by judicial construction beyond what is expressly granted or necessarily implied in the statute." *Id.*

Likewise, the legislature has not authorized park rangers to make arrests outside of their jurisdiction. Section 253.065.1. In *Fredericktown,* the trial court held that a city police officer lacked authority to make an arrest outside its city limits and found the motorist not guilty. *Fredericktown,* 761 S.W.2d at 716. The city appealed; however, the judgment of acquittal was affirmed on appeal because "the law simply does not confer authority to arrest in this situation." *Id.* The courts have recognized the testimony of an experienced arresting officer regarding the speed of a vehicle, *State v. Calvert,* 682 S.W.2d 474, 480 (Mo. banc 1984); however, Appellant was not convicted of simply speeding. He was convicted of traveling at the speed of fifty-seven miles per hour in a thirty-five mile per hour zone. Even an experienced arresting officer could hardly testify to such exactness. For these reasons, I would reverse the conviction.