**CITY OF ASH GROVE, Plaintiff–Respondent,**

v.

**Ray Ridenour CHRISTIAN, Defendant–Appellant.**

No. 21161.

Missouri Court of Appeals, Southern District, Division One.

July 22, 1997.

Timothy J. Corrigan, Springfield, for defendant–appellant.

Theodore L. Johnson, III, Thomas M. Benson, St. Louis, for plaintiff–respondent.

Before BARNEY, P.J., and PREWITT and GARRISON, JJ.

PER CURIAM.

Ray Ridenour Christian (Defendant) appeals from a judgment of the Circuit Court of Greene County, Missouri, which convicted him of driving while intoxicated in violation of Ordinance 430 of the City of Ash Grove (Plaintiff).

Defendant raises one point of trial court error. Defendant maintains that because he was arrested by a city police officer outside the city limits that his arrest was violative of section 544.157[1] because the officer was without jurisdiction to arrest him. Therefore, Defendant argues that the trial court's judgment resulted from its erroneous application of the law regarding the "fresh pursuit" exception to the rule prohibiting peace officers from effectuating warrantless arrests outside their jurisdictional territory. Defendant then asseverates that any evidence gathered during the course of his arrest should have been excluded because it was tainted as "fruit of the poisonous tree" in violation of his constitutional rights against unreasonable searches and seizures. *See* U.S. CONST. amend. IV; MO. CONST. Art. 1, § 15.

I.

The evidence shows that on October 25, 1995, Officer Jerry Jones, an Ash Grove police officer, was observing traffic near the intersection of Boone and Calhoun streets, inside the city limits of Ash Grove, Missouri. At approximately 1:45 a.m., Office Jones observed Defendant's 1983 Toyota pickup truck as it proceeded north on Calhoun street. Officer Jones noted that the vehicle was driving at a rate of speed in excess of the posted 25 m.p.h. speed limit. Officer Jones testified that the Toyota pickup came to an abrupt stop at the intersection of Boone and Calhoun streets. After leaving the intersection, the Toyota reached a position north of College street, a 35 m.p.h. zone, and Officer Jones noted that Defendant's vehicle was "running in excess of 40 [m.p.h.]." Officer Jones then followed Defendant's vehicle within the city limits, for further observations, and noted the vehicle was "wandering within the traffic lane that it was driving in ... [j]ust gradual movements from near the centerline to near the shoulder." Officer Jones testified that no other vehicle came between his vehicle and that of Defendant. He further stated that the vehicle remained in his line of sight and vision. Defendant's vehicle then traveled outside the city limits of Ash Grove. The officer did not activate his vehicle's emergency lights or siren within the city limits of Ash Grove while following Defendant.

Officer Jones testified that sometime after leaving the city limits of Ash Grove, Defendant voluntarily stopped his vehicle on the shoulder of the road. It was about this time that Officer Jones activated his emergency lights. Defendant was subsequently arrested for driving while intoxicated, outside the city limits of Ash Grove, Missouri.[2]

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. Although evidence in the record shows that at the time of the arrest of Defendant, Officer Jones was a deputy sheriff of Greene County, Missouri,

## II.

■ "The law in Missouri considers violations of municipal ordinances to be civil matters, but requires courts to apply the criminal standard of proof beyond a reasonable doubt because of the quasi-criminal aspects involved." *University City v. MAJ Inv. Corp.,* 884 S.W.2d 306, 307 (Mo.App. 1994). Our review is under the standard established by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The trial court's decision must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

In review of Defendant's sole point of error, Defendant does not contest the fact that he was operating a motor vehicle in an intoxicated condition.[3] Rather, Defendant contends that the arresting officer had no authority to arrest him outside of the city limits of Ash Grove, Missouri.

Defendant asseverates that Officer Jones was not acting pursuant to section 544.157, which authorizes a municipal officer to effectuate an arrest outside the city limits of a municipality. Defendant argues that the actions taken by the police officer did not constitute "fresh pursuit," as that term is used in section 544.157, because at no time during the course of following Defendant did the officer indicate to Defendant that he desired him to submit to the officer's authority.

■ Section 544.157 reads, in pertinent part, as follows:

1. Any peace officer certified under chapter 590, RSMo, of any political subdivision of this state . . . in fresh pursuit of a person who is reasonably believed to have committed a felony in this state or who has committed, or attempted to commit, in the presence of such officer . . . any . . . violation of a municipal or county ordinance . . . shall have authority to arrest and hold in custody such person anywhere in this state. Fresh pursuit may only be initiated from within the pursuing peace officer's . . . jurisdiction and shall be terminated once the pursuing peace officer is outside of his jurisdiction and has lost contact with the person being pursued.

\* \* \*

3. The term **"fresh pursuit"**, as used in this section shall include hot or fresh pursuit as defined by the common law and also the pursuit of a person who has committed . . . [a] violation of municipal or county ordinance in the presence of the arresting officer referred to in subsection 1 of this section. . . . *"Fresh pursuit" as used herein shall imply instant pursuit.* (emphasis added).

Thus, a municipal police officer, such as Officer Jones, who has been certified under the provisions of Chapter 590, when in "fresh pursuit" of a person whom he has seen commit or has attempted to commit a violation of a municipal ordinance may effectuate such a person's arrest outside of the municipality's city limits.[4] *See* §§ 590.100–.500.

---

no evidence was shown that the City of Ash Grove, Missouri, had complied with the requirements of section 57.101, which would have authorized Officer Jones to have arrested the Defendant outside the city limits. This section, *inter alia,* authorizes a deputy sheriff of a county to exercise the same power and authority to enforce the ordinances of a city in the same manner as the police of the city, but only upon express authorization by the sheriff of the county · wherein the city is located, and the approval of the governing board of the county.

3. The evidence reveals that the arresting officer activated the video camera in his patrol car, after leaving the city limits of Ash Grove. The tape showed that the officer was about three miles outside of the city limits at the time of Defendant's arrest. After preliminary discussions with

Defendant, in which Officer Jones told Defendant that he had observed Defendant violate the speed limit in Ash Grove, Officer Jones conducted a field sobriety test. Defendant was unable to complete the test. It was at that point in time that Defendant reiterated that he had drunk three or four beers, and stated: "Take me to the bank. You got me."

4. We note that Defendant's arrest by Officer Jones could not have been considered valid as a citizen's arrest. "A private citizen may arrest on a showing of the commission of a felony and reasonable grounds to suspect the arrested party, to prevent an affray of breach of the peace, and for a misdemeanor if authorized by statute." *State v. Devlin,* 745 S.W.2d 850, 851–52 (Mo.App. 1988). "No authority can be found granting private citizens the privilege to stop and detain

■ The crux of the instant case, then, centers upon the definition of "fresh pursuit." Necessarily, in these types of cases, whether a suspect's arrest is valid under the doctrine of fresh pursuit is generally determined upon an examination of the facts and circumstances of each case. *See, e.g., People v. Clark*, 46 Ill.App.3d 240, 4 Ill.Dec. 785, 788, 360 N.E.2d 1160, 1163 (1977)(discussing Missouri's "fresh pursuit doctrine" with reference to a parallel Missouri law. *See* § 544.155).

The present version of section 544.157 was derived from an earlier 1965 enactment. *See* L.1965, p. 662, §§ 1 to 3, 5, 6, amended by L.1972, H.B. No. 1160, p. 1027, § 1. The former version spoke in terms of "hot pursuit," as opposed to "fresh pursuit," and stated that the term "Hot pursuit, as used herein *shall not necessarily imply instant pursuit but pursuit without unreasonable delay." Id.* (emphasis added).

The Missouri legislature amended section 544.157 in 1993. The amended version of section 544.157 speaks in terms of "hot pursuit" and "fresh pursuit" interchangeably, without distinction, and substitutes the term "fresh pursuit" for "hot pursuit" throughout the statute. Additionally, the statute now defines "fresh pursuit" in terms of "instant pursuit," not "pursuit without unreasonable delay" as in the original, 1965 enactment of section 544.157. *See* § 544.157.3 We, therefore, must determine the difference between the two phrases "instant pursuit" as in the present enactment and "pursuit without unreasonable delay" as in the prior enactment.[5]

■ The primary rule of statutory construction requires the courts to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Conagra Poultry Co. v. Director of Revenue*, 862 S.W.2d 915, 917 (Mo. banc 1993).

The word "pursuit" has been described as "[t]o follow or chase in order to apprehend or overtake." BLACK'S LAW DICTIONARY 1237 (6th ed.1990). "Pursue" is defined as "to follow in order to overtake, capture, kill, or defeat." WEBSTER'S NEW COLLEGIATE DICTIONARY 938 (1977). Further, the term "fresh" has been described as "immediate; recent; following without any material interval." BLACK'S LAW DICTIONARY 666 (6th ed.1990). "Instant" is described as "[p]resent" or "current." BLACK'S LAW DICTIONARY 799 (6th ed.1990). "Instant" is also defined as "importunate, urgent, present, current, immediate, direct." WEBSTER'S NEW COLLEGIATE DICTIONARY 598 (1977).

The word "delay" is described as "[t]o retard; obstruct; put off; postpone; defer; procrastinate; prolong the time of or before; hinder; interpose obstacles." BLACK'S LAW DICTIONARY 425 (6th ed.1990). "Unreasonable" is described as "[i]rrational; foolish; unwise; absurd; silly; preposterous; senseless; stupid; [n]ot reasonable; immoderate; exorbitant; [c]apricious; arbitrary; confiscatory." BLACK'S LAW DICTIONARY 1538 (6th ed.1990).

■ When the legislature amends a statute, it is presumed to have intended the amendment to have some effect. *Tunstill v. Eagle Sheet Metal Works*, 870 S.W.2d 264, 271 (Mo.App.1994). We determine that the phrase "instant pursuit" as used in section 544.157.3 implies an attempt to apprehend or overtake in an immediate manner, without delay. On the other hand, "pursuit without

---

persons believed to have committed ordinance violations or traffic offenses...." *Id.* at 852 (quoting *Settle v. State*, 679 S.W.2d 310, 318 (Mo.App.1984), *cert. denied* in 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985)).

**5.** In the Uniform Law on Fresh Pursuit, section 544.155 referred to earlier, the legislature describes the term "fresh pursuit" as being in accord with the common law definition of the term. However, this legislative enactment appears to limit the immediacy of the term "fresh pursuit." The enactment states that: *"Fresh pursuit ... shall not necessarily imply instant pursuit, but*

*pursuit without unreasonable delay." §* 544.155.5 (emphasis added).

Additionally, in the Title to the Act the legislative purpose is defined. The Act states that it is one "providing that a duly constituted peace officer of another state may enter this state in fresh pursuit of a person believed to have committed a felony, defining such officer's authority while in this state, providing for the arrest and arraignment of such suspected felon, defining the term 'fresh pursuit' and making uniform the law with reference thereto." L.1951, S.B.No.187, p. 456.

unreasonable delay" connotes an attempt to apprehend or overtake without postponement or prolongation that may be considered immoderate, capricious, arbitrary, or not reasonable. Thus, we hold that 1993 amendment of section 544.157 appears to expand on the *immediacy* of the concept of "pursuit" by requiring "instant" pursuit, as opposed to the more lax standard of "pursuit without unreasonable delay" as found in the earlier enactment, as well as in the Uniform Law on Fresh Pursuit. *See* § 544.155; *see also* footnote 4, *supra.*

At common law, the doctrine of fresh pursuit, also known as hot pursuit, allows an officer to pursue a felon or suspected felon, with or without a warrant, into another jurisdiction and arrest him there. 5 AM.JUR.2D *Arrest* § 72 (1995). The common law also requires an officer to begin the chase in his or her own jurisdiction and continue until the suspect is caught. The unmodified doctrine applies only to felonies. *Id.* Under the common law, fresh pursuit denotes a continuous and uninterrupted pursuit, although a continuous surveillance of the suspect or uninterrupted knowledge of the suspect's whereabouts is not necessary. *Id.* The fresh pursuit doctrine has been capsulated as follows:

> The critical elements characterizing fresh pursuit are its continuity and its immediacy rather than merely the rate of speed at which the pursuit is made. The officer has a duty to ensure that no harm occurs as a result of the pursuit and he can wait until a safe opportunity to make the arrest or until he receives assistance from officers within the jurisdiction before stopping the automobile. *However, although the pursuit does not imply a fender-smashing Hollywood-style chase scene, it does connote something more than mere casual following.*

5 AM.JUR.2D *Arrest* § 72 (1995) (emphasis added).

In *City of Wenatchee v. Durham,* 43 Wash. App. 547, 718 P.2d 819 (1986), the Washington court of appeals held that, based upon its review of the common law of its state and other jurisdictions, that there are generally five criteria to be used in an analysis of fresh pursuit: (1) that a felony occurred in the jurisdiction [although by statute various jurisdictions have expanded the doctrine to include misdemeanors]; (2) that the individual sought must be attempting to escape to avoid arrest or at least know he is being pursued; (3) that the police pursue without unnecessary delay; (4) that the pursuit must be continuous and uninterrupted, though there need not be continuous surveillance .of the suspect nor uninterrupted knowledge of his location; and (5) that there be a relationship in time between the commission of the offense, commencement of the pursuit, and apprehension of the suspect. *Id.* at 821–22.

In *Wenatchee,* the defendant was operating a vehicle within the municipality when a police officer observed certain traffic infractions. The officer followed the driver through town without activating his vehicle's siren or flashing lights. The defendant driver then crossed the boundary of the city limits. He was then stopped and initially given a warning. However, after the police officer received a radio dispatch, the driver was arrested for driving while his license was suspended. The Washington court held that the "flight requirement was not satisfied." *Id.* at 822. The court stated that there was "no evidence that [the driver] was attempting to escape or [flee] the jurisdiction to avoid arrest." *Id.* Nor was there "evidence that [defendant] knew he was being pursued while in [the city limits]." *Id.* The court then held that the evidence obtained during the arrest would be suppressed because it was obtained pursuant to an unauthorized and therefore illegal arrest. *Id.*

■ Testing the facts and circumstances of the instant case by the statutory language contained in section 544.157, together with the interpretation of "fresh pursuit" given by other legislative enactments, the common law and the cited case, we are of the opinion that Officer Jones was not engaged in "fresh pursuit" of Defendant prior to his arrest. *See* § 544.157.3.

Defendant's method of operating his vehicle while traveling though Ash Grove could hardly be considered that of "flight" to avoid apprehension. This is particularly so when one considers that Defendant voluntarily

stopped his vehicle on the shoulder of the road sometime after departing the city limits, either just before or immediately after Officer Jones activated the emergency lights on his vehicle. Officer Jones did not activate either the siren or emergency lights of his vehicle while in the city limits and little, if any, evidence in the record shows that Defendant knew that he was being pursued until after having exited the city limits of Ash Grove. Additionally, Officer Jones followed the vehicle in an almost casual manner through the community. This hardly comports with the amended definition of "instant pursuit" as required by the legislature, nor with the common law requirement that the police pursue without unnecessary or unreasonable delay.

Further, "[f]resh pursuit may only be initiated from within the pursuing officer's ... jurisdiction...." § 544.157.1. However, Officer Jones testified that he was merely "following" Defendant through the city and outside the city limits "to observe it further." We do not interpret Officer Jones' conduct of "following" in this case to be synonymous with "pursuing." Even if Officer Jones began "pursuing" Defendant immediately before Defendant stopped his vehicle, as Plaintiff argues, such pursuit was not initiated within the city limits of Ash Grove, Officer Jones' jurisdictional territory.

In summary, while proof of flight by a suspect may more easily be shown if the police utilize sirens and/or emergency lights in pursuance of a suspect, a suspect's knowledge of police pursuit may be proven in other ways. Nevertheless, to show "fresh pursuit" in accordance with the statutory mandate of section 544.157, police pursuit must be initiated within the peace officers' jurisdiction, must be immediate and without delay, consistent with reasonable police safety practices, and should be accompanied with a purpose to stop the vehicle.

In the instant case, the evidence obtained during Defendant's arrest should have been

suppressed because it was obtained pursuant to an unauthorized and therefore illegal arrest.[6] *See Wenatchee,* 718 P.2d at 822; *see also State v. Vinzant,* 716 S.W.2d 367, 370 (Mo.App.1986); *Settle v. State,* 679 S.W.2d 310, 319–20 (Mo.App.1984); *see generally Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The judgment of the trial court is reversed.

**6.** We note that section 544.157.4 provides that a "public agency electing to institute vehicular pursuits shall adopt a policy for the safe conduct of vehicular pursuits by peace officers." Subsection 4 of section 544.157 then delineates specific minimum standards to be followed in such an event. However, no issue was made by either party regarding this particular provision of the statute.